UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
                                   )
GOAT ISLAND SOUTH CONDOMINIUM      )
ASSOCIATION, INC. and CAPELLA      )
SOUTH CONDOMINIUM ASSOCIATION,     )
INC.,                              )
                                   )
         Appellants,               )
                                   )
    v.                             )    C.A. No. 14-245 S
                                   )
IDC CLAMBAKES, INC.,               )
                                   )
         Appellee.                 )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Pending before the Court is Appellants Goat Island South Condominium Association, Inc. and Capella South Condominium Association, Inc.'s (collectively the "Associations") appeal of the United States Bankruptcy Court decision in this matter. (ECF No. 25.) The decision of the Bankruptcy Court is AFFIRMED in part and VACATED in part.[1]

The Bankruptcy Court chronicled the factual and procedural background of this case in great detail. This Court will not

_____

[1] The Court has appellate jurisdiction over the final judgment of a United States Bankruptcy Court sitting within its jurisdiction. 28 U.S.C. § 158. The Court reviews the Bankruptcy Court's rulings of law de novo and its findings of fact for clear error. Bank Rhode Island v. Pawtuxet Valley Prescription & Surgical Ctr., Inc., 386 B.R. 1, 3 (D.R.I. 2008).

repeat that background here, and Parts I and II of the Bankruptcy Court's decision are hereby ADOPTED. The Court agrees with the Bankruptcy Court's analysis of the question presented and the burden of proof. Additionally, this Court agrees with the Bankruptcy Court concerning the lack of an implied-in-fact contract.[2] Accordingly, this Court affirms Parts III.1-2 of the Bankruptcy Court's decision.

However, the Bankruptcy Court's implied-in-law or quasi-contract analysis is a different matter.[3] Faced with a record

---

[2] Specifically, the Court agrees that an implied-in-fact contract requires mutuality of assent and an agreement to be bound. Here, the Bankruptcy Court correctly determined that these elements were lacking. Indeed, Associations and IDC Clambakes, Inc.'s ("Clambakes") corporate sister, IDC Properties, raged against one another concerning the property for years until, ultimately, the Rhode Island Supreme Court ruled that Associations was the rightful owner. To say that Clambakes and Associations had a meeting of the minds, mutual assent, and an intention to be bound to one another during this time ignores that reality.

[3] At the outset, Associations' argument that Clambakes should be judicially estopped from claiming that no implied agreement existed between the parties should be addressed. Judicial estoppel is an extraordinary equitable doctrine within the Court's discretion that is only invoked when a party derives an unfair advantage from presenting inconsistent arguments to the court. Gaumond v. Trinity Repertory Co., 909 A.2d 512, 519 (R.I. 2006). To support its position, Associations point to Clambakes' application for a temporary restraining order in the Bankruptcy Court in June 2005, in which Clambakes asserted that, at a minimum, a tenancy at sufferance had been created by the dynamic between Associations and Clambakes. (Mot. for Temp. Restraining Order 9-10, ECF No. 17.) Although a tenancy at sufferance carries with it some implication that an agreement once existed, see Ucci v. Mancini, 344 A.2d 367, 370 (R.I. 1975), Clambakes did not specifically argue in its temporary

that has been described by the First Circuit as "problematic," Goat Island S. Condo. Ass'n, Inc. v. IDC Clambakes, Inc. (In re Clambakes, Inc.), 727 F.3d 58, 61 (1st Cir. 2013), the Bankruptcy Court properly determined that the correct solution to this dispute could be found by turning to equity. The Bankruptcy Court determined that certain elements of an implied-in-law, or quasi, contract had been met, but ultimately held that Clambakes had provided reciprocal benefits to Associations, such that no payment for use and occupancy was warranted. While the Court agrees with the Bankruptcy Court's overall framework, the Bankruptcy Court's application of that framework and its chosen remedy were clearly erroneous. Therefore, for the reasons set forth below, the Bankruptcy Court's decision on the quasi-contract issue is vacated.

I. Discussion

Before assessing the Bankruptcy's Court equitable analysis, a critical aspect of this case must be reviewed at the outset. Although Island Development Corporation, Inc. and IDC Properties, Inc. (collectively, "IDC") constructed the Regatta Club at its own expense, the Rhode Island Supreme Court has

---

restraining order application that it had an express or implied agreement with Associations. Additionally, both parties have argued this case under alternative theories as it has progressed, and thus the equities do not clearly favor either side.

3

determined that it did so after its development rights had expired and that, consequently, the Regatta Club is owned by Associations, the entities that own the land upon which it was built. See Am. Condo. Ass'n, Inc. v. IDC, Inc., 870 A.2d 434, 443 (R.I. 2005) (America II); Am. Condo. Ass'n, Inc. v. IDC, Inc., 844 A.2d 117, 131 (R.I. 2004) ("America I"). Further, the Rhode Island Supreme Court rejected IDC's argument that Associations' ownership of the Regatta Club constituted "a considerable and inequitable windfall" on account of IDC's "considerable investment in developing the . . . Regatta Club." America I, 844 A.2d at 134. The Court emphasized that IDC built the Regatta Club "at a time when [it was] on notice that [its] right to do so was in dispute" and concluded that IDC constructed the building "at [its] peril and cannot now contend that equity should prevent [Associations] from prevailing because of their expenditures." Id. at 135. Any equitable analysis in this case must accept the Rhode Island Supreme Court's determination that Associations owned the Regatta Club from the moment it was constructed and that IDC was not entitled to equitable relief for the costs it incurred in constructing the Regatta Club. These determinations are the established facts of this case, and this proceeding cannot be a vehicle to revisit or temper the effects of those holdings. That die is cast, and it is from this premise that the analysis begins.

4

The Bankruptcy Court's analysis overlooks this aspect of the case and, as a result, is clearly erroneous in several respects. At the outset, the Bankruptcy Court clearly erred in characterizing the lease of the Reserved Area as a ground lease. Additionally, the Bankruptcy Court clearly erred in its balance of the equities – which resulted in its determination that Clambakes owed Associations nothing – by incorrectly considering rent paid by Clambakes to IDC Properties, the cost of constructing the Regatta Club, and the fact that Associations already had received title to the building in earlier litigation. Finally, apart from these errors, the Bankruptcy Court also clearly erred in offsetting the amount that Clambakes would otherwise owe Associations with the goodwill that Clambakes created in the Regatta Club; on this record, there is no basis by which to quantify that goodwill.

To recover on an implied-in-law contract, a party must prove that the plaintiff conferred a benefit to the defendant, that the defendant appreciated the benefit, and that, under the circumstances, it would be inequitable for the defendant to retain the benefit without payment of the value of that benefit. <u>Fondedile, S.A. v. C.E. Maguire, Inc.</u>, 610 A.2d 87, 97 (R.I. 1992). The Court agrees with the Bankruptcy Court that these elements fit the circumstances of this case.

The Bankruptcy Court properly found that Associations conferred a benefit upon Clambakes by permitting it to operate its business in the Reserved Area. The Bankruptcy Court clearly erred, however, in finding that the nature of this benefit was a ground lease. In the state-court litigation, the Rhode Island Supreme Court determined that Associations owned the Regatta Club from its construction to the end of Clambakes' occupancy. America I, 844 A.2d at 135 (explaining that one who proceeds in the face of a known challenge to property proceeds at his own peril because "the duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of the expense of the wrongdoer"); America II, 870 A.2d at 442 ("Consequently, these portions of the condominium always were, and remain, common elements."). Though the Associations did not construct this building, it cannot be ignored that the Rhode Island Supreme Court has deemed them to be the owners since its construction. Nor can it be ignored that Clambakes benefited from the building as well as the land. Clambakes did not construct the building, but did become effectively a tenant of both the property and building, and thus must pay for its use of both.

The Bankruptcy Court determined that, if the building was included, the appropriate use and occupancy cost from March 1, 1998 to April 7, 2005 was $2.6 million. This finding is

6

supported by the record. In making this finding, the Bankruptcy Court credited testimony of Associations' expert, and rejected testimony from Clambakes' expert. Associations' expert calculated a fair use and occupancy value during the time in question to be $2.6 million. (Foster Tr. 75, ECF No. 15-7.) Under cross examination, Clambakes' expert admitted that on the high end, he calculated a proper use and occupancy value at $3.2 million. (Scotti Tr. 23, ECF No. 15-3.) This expert, however, took pains to qualify this figure, explaining that it was the high side of his estimate and did not include certain adjustments he could have made. (Id. at 25-26.) Simply put, the Bankruptcy Court's decision to credit the Associations' expert over the Clambakes' expert to determine a reasonable fee for the use and occupancy of the Regatta Club and the ground it occupies was supported by the record and not clearly erroneous.

The second step in the inquiry is determining whether Clambakes appreciated the benefit conferred upon it. The evidence indicates that Clambakes operated a successful business venture at the Regatta Club, but did not pay Associations for the use of this property; this demonstrates that Clambakes appreciated the benefit that was conferred upon it, as the

Bankruptcy Court correctly determined.[4] See Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 100 (R.I. 2006).

The third step requires assessing the equities of the situation to determine if a payment is warranted. The Bankruptcy Court clearly erred when it included several factors in the analysis to determine that, under these circumstances, Clambakes need not pay Associations anything. For starters, it was clear error to consider the cost of building the Regatta Club and the fact that rent paid by Clambakes likely helped fund the construction. Clambakes played no role in this construction, and the fact that its rental payments may have subsequently funded the development of the property is beside the point. Indeed, in America I the Rhode Island Supreme Court determined that the entity that constructed the building, IDC, was not entitled to equitable relief based on its expenditures because it built in the face of a known challenge to title. While the Court may properly evaluate the totality of the circumstances, it would fly in the face of the holding of America I to consider the value of the property IDC lost in that litigation in mitigation of the cost to Clambakes. See R & B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1353-54 (R.I.

---

[4] The existence of a lease between Clambakes and IDC Properties establishes that Clambakes knew it was not permitted to use the property for free. Clambakes simply erroneously paid the wrong party.

8

1984) (holding trial court was "clearly wrong" in considering close relationship between corporate entities in quantum meruit case).

The simple fact remains that Clambakes owes use and occupancy payments to the rightful owner of the Reserved Area. Id. at 1355 ("The concept of quasi-contractual liability rests upon the equitable principle that one shall not be permitted to enrich himself unjustly at the expense of another or to receive property or benefits without making compensation therefor."). Simply because Clambakes was mistaken about the identity of that owner does not excuse this obligation, and it was clear error to factor in Clambakes' rental payments to IDC Properties. In theory, Clambakes may have a cause of action against IDC Properties for the repayment of its wrongful rental payments – though given the common ownership of both entities such a lawsuit would be hard to imagine. But if there is a remedy for Clambakes' misdirected rent payment it is there, not here.

The Bankruptcy Court also clearly erred when it considered the money that Clambakes expended to outfit and maintain the property. Just as IDC constructed the Regatta Club at its peril when it "developed the Reserved Area at a time when [it was] on notice that [its] right to do so was in dispute," America I, 844 A.2d at 135, Clambakes outfitted and maintained the property at its peril, knowing full well that ownership of the building and

9

land was in dispute.  In these circumstances, equity cannot weigh in favor of a reduction in the amount that Clambakes owes Associations.

Finally, the Bankruptcy Court clearly erred in deducting at least $240,000 per year from the use and occupancy payment to account for goodwill and the value of the Regatta Club.  To be sure, Associations benefited – and continues to benefit – from the operation Clambakes began.  The Bankruptcy Court did not err in finding that goodwill transferred from Clambakes to Associations; but it clearly erred in its finding as to the value of that goodwill.  On the record before this Court, there is insufficient particularized evidence to determine the extent of this goodwill.  Clambakes' expert, Peter Scotti, opined that Associations leased out the Regatta Club for $1.5 million more than it otherwise would have been able to thanks to the Regatta Club building.  (Report of Peter Scotti 134, ECF No. 10.)  To reach this figure, Scotti valued the Regatta Club building at $2.8 million and determined that Associations received rent of $300,000 more per year from its new tenant under a five-year lease than it otherwise would have obtained for an empty lot.  (Report of Peter Scotti 134, ECF No. 10; Scotti Tr. 14-15, ECF No. 15-3.)  Foster, the Associations' expert, determined that the building resulted in a rental payment $240,000 per year

higher than Associations otherwise would have obtained. (Foster Tr. 110, ECF No. 15-7.)

But the value of the building is not goodwill, and does not account for the value of Clambakes' operations going forward. The Rhode Island Supreme Court has already decided the case between IDC and Associations. And, while experts from both sides agree that some measure of goodwill passed when Clambakes vacated the Reserved Area, neither expert offered evidence to quantify the value of this goodwill.[5] (Foster Tr. 84-85, ECF No. 15-7; Scotti Tr. 13-14, 30, ECF No. 15-3.) The value of the building cannot be used as a stand-in for the value of the business that was transferred. Therefore, no offset can be properly made for the value of this goodwill.

---

[5] The reputation Clambakes built clearly had value. Calls made to the Regatta Club after Clambakes vacated the premises were forwarded to the new tenant Longview. (Foster Tr. 89-90, ECF No. 15-7.)

11

II. Conclusion

For the foregoing reasons, after considering the record evidence, the Court finds that under quasi contract, and the facts of this case, Clambakes must pay Associations $2,600,000 for its use and occupancy of the Reserved Area and Regatta Club.

IT IS SO ORDERED.

/s/ *William E. Smith*
William E. Smith
Chief Judge
Date:  June 10, 2015