UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
GOAT ISLAND SOUTH CONDOMINIUM       )
ASSOCIATION, INC., and              )
CAPELLA SOUTH CONDOMINIUM           )
ASSOCIATION, INC.,                  )
                                    )
            Appellants,             )
                                    )
    v.                              )   C.A. No. 14-245 S
                                    )
IDC CLAMBAKES, INC.,                )
                                    )
            Appellee.               )
_____)

**ORDER**

WILLIAM E. SMITH, Chief Judge.

Appellants, Goat Island South Condominium Association, Inc. ("GIS") and Capella South Condominium Association, Inc. ("Capella" and, collectively with GIS, the "Associations"), have timely moved to alter or amend the judgment entered on June 11, 2015. (ECF No. 35.) For the reasons that follow, the Associations' motion is granted in part and denied in part. Specifically, this Court grants the Associations' motion with respect to the sewer repair claim; denies the motion with regard to interest on the Court's $2.6 million award on the Associations' quasi-contract claim; and denies the Associations' motion for costs.

I.   Sewer Repair Claim

The Associations first move to add $7,290.00 to the judgment to account for a previously allowed claim for a sewer repair invoice, plus interest. (See Ass'ns' Mot. 4, ECF No. 35-1.) Although Appellee, IDC Clambakes, Inc. ("Clambakes"), has filed an opposition (ECF No. 45) and a sur-reply (ECF No. 51-1), Clambakes ostensibly does not oppose the request that the judgment be amended to reflect the previously allowed sewer repair claim, nor does Clambakes address the Associations' claim for interest on the sewer repair claim. The Bankruptcy Court allowed this claim in 2010.  See In re IDC Clambakes, Inc., 431 B.R. 51, 62-63 (Bankr. D.R.I. 2010) ("Clambakes I"), vacated in part on other grounds, 484 B.R. 540 (D.R.I. 2012).  Therefore, this Court GRANTS the Associations' motion to amend the judgment to reflect the $7,290.00 sewer repair claim, plus interest.

II.  Interest on Use-and-Occupancy Claim

The Associations seek pre- and post-petition interest on their use-and-occupancy claim. (See Ass'ns' Mot. 4-7, ECF No. 35-1.)  In support of this argument, the Associations note that the Second Amended Plan of Reorganization (the "Plan") provides for the payment of a specified percentage of interest for "Allowed Claims." (See Ass'ns' Mot. 4, ECF No. 35-1; Plan 10-11, ECF No. 35-3.)  Clambakes opposes this

request, arguing that, because the Associations did not assert the quasi-contract basis for the use-and-occupancy claim in their Proof of Claim, Clambakes was only on notice of the Associations' unsuccessful trespass claim at the time the Plan was approved. (Clambakes' Opp'n 4-5, ECF No. 45-1.) Clambakes also argues that the Plan does not define the term "Claim" in a way that encompasses the quasi-contract basis for the Associations' use-and-occupancy claim. (See id. at 6-7.) Finally, Clambakes contends that the equitable relief ordered by this Court does not constitute an allowance of the Associations' failed trespass claim. (See id. at 7-11.)

Clambakes is correct that the Associations' claim for trespass was unsuccessful. The First Circuit did not, as the Associations contend, "reverse[] the disallowance of the claims." (Ass'ns' Reply 4, ECF No. 50.) The bankruptcy court found that the Associations impliedly consented to Clambakes' operation of the Regatta Club, and that finding was affirmed by the First Circuit. See In re IDC Clambakes, 727 F.3d 58, 65-72 (1st Cir. 2013) ("Clambakes II"). Because "[c]onsent, in any form, is fatal to a claim for trespass," id. at 65, the finding of implied consent defeated the Associations' use-and-occupancy claim for trespass. The First Circuit's remand was limited to "the issue whether the implied consent

3

in this circumstance gives rise to an obligation to pay the fair value for [Clambakes'] use and occupancy and, if so, in what amount." Id. at 72. Accordingly, this Court's award of $2.6 million was grounded in equity, on a theory of unjust enrichment. See Goat Island South Condominium Ass'n, Inc. v. IDC Clambakes, Inc., 533 B.R. 845, 849 (D.R.I. 2015) ("Clambakes III") ("To recover on an implied-in-law contract, a party must prove that the plaintiff conferred a benefit to the defendant, that the defendant appreciated the benefit, and that, under the circumstances, it would be inequitable for the defendant to retain the benefit without payment of the value of that benefit. Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992). The Court agrees with the Bankruptcy Court that these elements fit the circumstances of this case.").

It is undisputed that the Associations' Proof of Claim identified "Trespass" as the basis for their claim.[1] (See GIS Proof of Claim, BK No. 05-12267, Claim 16-1; Capella Proof of Claim, BK No. 05-12267, Claim 17-1; see also Ex. A to GIS Proof of Claim, BK No. 05-12267, Claim 16-1; Ex. A to Capella

---

[1] Although both GIS and Capella filed separate Proofs of Claim, the content of each Proof of Claim (and its accompanying exhibit) are identical. For simplicity's sake, this Court refers to the claims asserted by GIS and Capella as one claim.

4

Proof of Claim, BK No. 05-12267, Claim 17-1 (explaining that the Associations' claim "[arose] from [Clambakes'] trespass" and that the Associations sought "damages caused . . . as a result of the unlawful trespass").) Consistent with the singular focus of the Proof of Claim, the Associations litigated their claim in the bankruptcy court as one for trespass. See Clambakes I, 431 B.R. at 54 (characterizing the Associations' claim as one for "damages arising out of Clambakes' alleged seven year trespass"). It was not until post-trial briefing – when the Associations obliquely noted that, at a minimum, they were entitled to fair rental value even if they impliedly consented to Clambakes' possession – that the Associations raised a claim based in equity. (See Ass'ns' Post-Trial Mem. 13, BK No. 05-12267, ECF No. 670);[2] see also Clambakes II, 727 F.3d at 72 (finding that the Associations had not waived their equitable claim because "the Associations presented their implied-obligation-to-pay argument in their post-trial motion" (emphasis added)).[3]

---

[2] Indeed, the Associations' Post-Trial Memorandum started by clearly stating: "The District Court's remand order presents this Court with two simple questions. Was IDC Clambakes' intentional entry on land that it did not own (or validly lease from the true owners) a trespass? If so, what are the Associations' damages?" (Id. at 1 (emphasis added).)

[3] It is disputable whether raising an "equitable claim" in one paragraph of a post-trial memorandum actually dodges the waiver bullet, see F.D.I.C. v. World Univ. Inc., 978 F.2d

Thus, the question becomes whether a claim that was asserted in a post-trial brief, long after the Proof of Claim, can morph into an "Allowed Claim" under the Plan. Because "[a] plan of reorganization is a binding contract between the debtor and the creditors and is subject to the general rules of contract construction and interpretation," In re New Seabury Co. Ltd. P'ship, 450 F.3d 24, 33 (1st Cir. 2006), the Court must closely examine the terms of the Plan, to which the parties are bound.

The Plan specifies that "Allowed Claims . . . shall be paid in full, plus the Interest Payment." (Plan 10, ECF No. 35-3.) The term "Claim" is defined as:

> all claims, as defined in § 101 (5) of the Code, of whatever nature, whether scheduled or unscheduled, secured or unsecured, liquidated or unliquidated, absolute or contingent, matured or un-matured, disputed or undisputed, legal or equitable, including, without limitation, all claims arising from the rejection of executory contracts and unexpired leases.

(Id. at 3-4.) There is also a separate definition of "Allowed Claim":

---

10, 16 (1st Cir. 1992) ("It is well settled that arguments made in a perfunctory manner below are deemed waived on appeal."); Plouffe v. New Pace, Inc., No. 92-2107, 1993 WL 93131, at *2 n. 5 (1st Cir. Mar. 31, 1993) (treating unjust enrichment and quasi-contract arguments as waived because "they were offered for the first time in a perfunctory manner in a post-trial memorandum"); but the Court of Appeals so held and remanded the case for determination.

>a Claim or Equity Security Interest or a portion thereof: (a) which is scheduled by the Bankruptcy Schedules of the Debtor prepared and filed by the Chapter 11 Trustee for which no objection has been filed by the Debtor as of the Confirmation Hearing Date; or (b) a Proof of Claim has been timely filed pursuant to § 501(a) of the Code on or before the date designated by the Bankruptcy Court as the last date for filing Proofs of Claim (hereinafter the "Bar Date") and with respect to which no objection to the allowance thereof has been interposed by the Confirmation Hearing Date; or (c) for which a scheduled or filed claim, after objection thereto, has been Allowed, in whole or in part, by a Final Order.

(Id. at 3.)

Clambakes argues that the Plan's definition of "Claim" does not include claims based in equity because "the Plan defines 'Claim' in a manner consistent with [§] 101(5)(A)" and does not include "any verbiage related to [§] 101(5)(B)."[4] (Clambakes' Opp'n 7, ECF No. 45-1.) The problem with this argument is that the Plan's definition of "Claim" clearly

---

[4] Section 101(5) of the Bankruptcy Code provides:
The term "claim" means--
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

7

states that "Claim means all claims, as defined in § 101(5) of the Code, of whatever nature, whether . . . legal or equitable." (Plan 3-4, ECF No. 35-3.) Thus, this Court is not persuaded that the Associations' equitable claim is not a "Claim" under the Plan; however, this does not necessarily mean that it fits the narrower definition of an "Allowed Claim."

An "Allowed Claim" under the Plan is not merely any "Claim" that has been allowed; it must meet one of the three criteria in the Plan's definition of "Allowed Claim":

> (a) scheduled by the Bankruptcy Schedules of the Debtor prepared and filed by the Chapter 11 Trustee for which no objection has been filed . . .
>
> (b) a Proof of Claim has been timely filed pursuant to § 501(a) of the Code . . . with respect to which no objection to the allowance thereof has been interposed . . .
>
> (c) for which a <u>scheduled or filed claim</u>, after objection thereto, has been Allowed, in whole or in part, by a Final Order.

(<u>Id.</u> at 3 (emphasis added).) In this case, an objection was filed so the only available option is (c). Because (a) refers to claims "<u>scheduled</u> by the Bankruptcy Schedules of the Debtor," and (b) states that "a Proof of Claim has been timely <u>filed</u>," it follows logically that a "scheduled or filed claim" in (c) is a claim that has either been scheduled by the Bankruptcy Schedules or filed as a Proof of Claim.

8

The Associations are correct that the First Circuit "allowed" their equitable claim based in implied contract to proceed, notwithstanding the fact that it was not included in the Proof of Claim; and, to be sure, this Court is bound by that ruling. However, the First Circuit's remand does not automatically make the late minted equitable claim an "Allowed Claim" under the Plan. The timing matters: as explained above, an "Allowed Claim" under the Plan must have been "scheduled by the Bankruptcy Schedules of the Debtor" or included in "a Proof of Claim [that was] timely filed." Here, the Associations first asserted their equitable claim in a post-trial brief four years after the Plan was confirmed. Therefore, even though the First Circuit allowed the Associations' equitable claim based on their post-trial brief, because it was not included in the Proof of Claim, it is not an "Allowed Claim" under the terms of the Plan.

The Associations argue that, notwithstanding the fact that their Proof of Claim only listed a trespass claim, "Clambakes always knew that the Associations' claim was for payment related to its use and occupation of the property." (Ass'ns' Reply 5, ECF No. 50.) This argument conflates an award for the value of rent as compensatory damages with an award for unjust enrichment. Rather, there are two theories on which Clambakes could be required to pay the Associations

9

rent for the Regatta Club: either the damage to the Associations (i.e. the amount the Associations could have earned if they had been renting the Regatta Club that whole time) or the amount by which Clambakes was unjustly enriched (i.e. the benefit Clambakes received based on its use and occupancy of the Regatta Club). The fact that, in this case, the two amounts happen to be the same - the fair market value of rent - does not convert the trespass claim that the Associations disclosed in the Proof of Claim into the equitable claim that they subsequently raised in their post-trial brief.

Yet the Associations claim that "[t]he label placed on the legal theory that prevails is not the critical aspect of a claim; it is the 'right of payment' that is the basis for any claim under the Code." (Id.) If the question were only whether or not the $2.6 million award qualified as a "Claim," this argument might hold water. However, an "Asserted Claim" must have been filed in the Proof of Claim, and thus, the theory on which recovery is based does matter.

In particular, the distinction between a tort claim and an equity claim is significant here because, as explained below, Rhode Island law requires that interest be paid on tort and contract claims, but not necessarily on claims in equity. While the Associations are correct that "the approval

10

of the plan renders it contractual in nature, and Clambakes must pay the agreed-upon interest regardless of whether there is a statutory basis for the interest" (id. at 7 n.5), there is no evidence that Clambakes actually agreed to pay interest on any claims other than the trespass claim disclosed in the Proof of Claim. Clambakes acknowledges that it "did agree to pay prejudgment interest on that trespass claim should the Associations prevail on that argument." (Clambakes' Sur-Reply 5, ECF No. 51-1.) However, according to Clambakes:

> This represents nothing more than a recognition that Rhode Island law imposes pre-judgment interest on tort and contract claims, and that the trespass claim sounded in tort. . . . Rhode Island law does not apply pre-judgment interest to awards in equity, and there is no basis to assert that Clambakes voluntarily and self-injuriously agreed to do so.

(Id.) This Court agrees.

Having found that the Associations' equitable award was not an "Allowed Claim" under the Plan, the Court must next consider whether the Associations are nonetheless entitled to interest under R.I. Gen. Laws § 9-21-10. Section 9-21-10(a) provides that:

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve

11

>percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided.

The Associations argue that "there can be no doubt that the $2.6 million awarded to the Associations for fair value of Clambakes' use and occupancy of the unit owners' property qualifies as 'pecuniary damages' under the Rhode Island prejudgment interest statute" (Ass'ns' Reply 7, ECF No. 50); as support, they note that "Rhode Island courts have held that damage awards for use and occupancy of property are 'pecuniary damages' within the meaning of the Rhode Island prejudgment interest statute." (Id. at 9) While it is true that in some cases Rhode Island courts have held a damage award for the use and occupancy of property to be pecuniary damages, the cases on which the Associations rely were all founded in either tort or contract, not equity.[5] See Rhode Island Econ. Dev. Corp. v. The Parking Co., L.P., 909 A.2d

---

[5] The Associations also cite Campbell v. Lederer Theater Co., 47 R.I. 8, 12 (1925), in which the Rhode Island Supreme Court did order interest on an equity claim. (See Ass'ns' Reply 8, ECF No. 50.) However, as Clambakes notes, this "is a ninety year old case, decided long before the 1958 passage of § 9-21-10 and fully fifty years before the legislature amended § 9-21-10 to, as [the Court] explained in Gott, 'equalize the right of tort and contract litigants to collect interest on judgments.'" (Clambakes' Sur-Reply 7 (quoting Gott v. Norberg, R.I., 417 A.2d 1352 (1980)).)

12

943 (R.I. 2006) (breach of contract and eminent domain case); Tate v. Peter Charles Reynolds, Inc., 622 A.2d 449 (R.I. 1993) (trespass case); L.T.F. Fin. Servs., Inc. v. Silva, No. PD 95-1305, 1995 WL 941454, at *1 (R.I. Super. July 20, 1995) (same). (See also Clambakes' Sur-Reply 6-7, ECF No. 51-1.)

As explained above, this Court's award was based on quasi-contract — an equitable claim based on unjust enrichment, not compensatory damages. The Rhode Island Supreme Court has not squarely addressed the issue of whether an award based on quasi-contract can qualify as pecuniary damages; however, in Gott v. Norberg, the Court found that based on the legislative history of § 9-21-10, the 1976 amendment adding the words "civil action" was "intended to equalize the right of tort and contract litigants to collect interest on judgments." 417 A.2d 1352, 1357 (R.I. 1980) (emphasis added). Moreover, several Rhode Island courts and the First Circuit have declined to award interest under § 9-21-10 on equitable awards. See Dennis v. R. I. Hosp. Trust Nat'l Bank, 744 F.2d 893, 901 (1st Cir. 1984), abrogated on other grounds by Salve Regina Coll. v. Russell, 499 U.S. 225 (1991) (noting that the Rhode Island Supreme Court "construe[s] the statute to apply only to those actions sounding in tort or contract" and affirming the district court's decision not to award interest on action

13

"traditionally viewed as one in equity, not in tort or contract" (citing Gott, 417 A.2d at 1357)); Cardillo-Kelsall v. Cardillo, No. PC 07-620, 2011 R.I. Super. LEXIS 84, at *6 (R.I. Super. June 27, 2011) ("Considering that the nature of this relief is equitable, not legal, the award does not constitute 'pecuniary damages' for purposes of § 9-21-10."); Tarpinian v. Daily, No. 95-0104, 1997 WL 838150, at *2 (R.I. Super. Aug. 15, 1997) ("This court declines to broadly construe the words 'pecuniary damages' as used in § 9-21-10 so as to include the equitable remedy of rescission."). As the Court explained in Tarpinian:

> An award of interest pursuant to the statute is a ministerial act to be performed by the clerk without judicial intervention. . . . Such an award is not an element of damages, but is purely statutory and is peremptorily added to the award by the clerk of the court. . . . However, when exercising its equitable power of rescission, the court is concerned with fashioning a remedy that is fair in light of the particular circumstances. In this context, an award of prejudgment interest is part of the judicial function and a component of the award. Moreover, the statutorily required 12% interest may not be equitable in all circumstances. As such, the court finds that § 9-21-10 does not apply here.

Id. at *3 (citations omitted).

Moreover, equity would not be served by granting interest in this case: the Associations did not prevail on their trespass claim — the only claim of which Clambakes was aware when it agreed to the Plan — and the Court's $2.6

14

million award was more than sufficient compensation for Clambakes' unjust enrichment. Nor would awarding interest in this case advance the intended purposes of § 9-21-10: "encouraging the early settlement of claims . . . and compensating plaintiffs for waiting for recompense to which they were legally entitled." Martin v. Lumbermen's Mut. Cas. Co., 559 A.2d 1028, 1031 (R.I. 1989) (citations omitted); see also Dennis, 744 F.2d at 901 (finding that the purpose of § 9-21-10 "would not be served by applying the statute here, for the district court calculated the surcharge in a way that made plaintiffs whole"). Thus, this Court finds that § 9-21-10 does not apply in this case.

III. Costs

The final aspect of the Associations' Rule 59(e) motion seeks an award of costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. (See Ass'n's Mot. 7, ECF No. 35-1.) This Court has discretion in determining whether to award costs under Rule 54(d)(1) and § 1920. See Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1172 (2013) ("[T]he decision whether to award costs [under Rule 54(d)(1)] ultimately lies within the sound discretion of the district court."); 28 U.S.C. § 1920 (providing that "[a] judge or clerk of any court of the United States may tax as costs" certain enumerated items (emphasis added)). In the unique

15

circumstances of this case, an award of costs to the Associations is unwarranted. For starters, it seems likely that the vast majority of the costs sought stem from the Associations' dogged pursuit of their ultimately unsuccessful trespass claim, which, as mentioned above, the Associations pursued with near singular focus at the bankruptcy court level. Additionally, because the First Circuit's understanding of the Associations' use-and-occupancy claim as encompassing more than the failed trespass claim was apparently based only on a single paragraph of the Associations' post-trial filing, it seems apparent that the Associations have already received more than they bargained for as a result of the remand and subsequent judgment in their favor. Awarding costs in these circumstances would turn the Associations' "equitable" award into an inequitable windfall.

IV. Conclusion

For these reasons, the Associations' motion to alter or amend the judgment is GRANTED IN PART and DENIED IN PART. Specifically, this Court GRANTS the Associations' motion with respect to the previously allowed sewer repair claim in the amount of $7,290.00, plus interest; DENIES the Associations' motion concerning pre- and post- petition interest on the use-and-occupancy claim; and DENIES the Associations' request for an award of costs. The Court hereby orders the

Associations to file a calculation of the amount of interest claimed on their $7,290.00 sewer claim within ten days of this Order.  Any objection to the Associations' calculation of interest must be filed within ten days of the Associations' filing.


IT IS SO ORDERED.


/s/ *William E. Smith*
---
William E. Smith
Chief Judge
Date:  November 30, 2015